KEITH JENKINS *v.* COMMISSIONER OF
CORRECTION
(AC 17883)

Schaller, Hennessy and Sullivan, Js.

Argued December 3, 1998—officially released March 23, 1999

*Jo Anne Sulik*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Christopher L. Morano*, deputy chief state's attorney,

and *John J. Dropick*, former senior assistant state's attorney, for the appellant (respondent).

*Elizabeth M. Inkster*, assistant public defender, for the appellee (petitioner).

*Opinion*

SCHALLER, J. The respondent commissioner of correction appeals from the judgment of the habeas court granting the petitioner's amended petition for habeas corpus, which was based on a claim of ineffective assistance of trial counsel. The respondent claims on appeal that the habeas court improperly (1) applied the *Strickland*[1] presumption that counsel's acts and omissions constitute reasonable tactical decisions, (2) found that counsel's performance was deficient for failing to object to the prosecutor's argument regarding the credibility of witnesses, (3) found that counsel's performance was deficient for failing to object to the prosecutor's inadvertent mixing of names, (4) found that counsel's performance was deficient for failing to object to the prosecutor's argument regarding alleged excessive force by the police and (5) found that the petitioner suffered prejudice as a result of counsel's failure to object to the state's various arguments. We reverse the judgment of the habeas court.

The following facts and procedural history provide the necessary background to the disposition of this appeal. The petitioner was convicted, after a jury trial, on November 7, 1989, of interference with a search in violation of General Statutes § 54-33d, risk of injury to a child in violation of General Statutes § 53-21 and reckless endangerment in the first degree in violation of § 53a-63 (a). The trial court subsequently sentenced the petitioner to a total effective sentence of twenty

---

[1] *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

years incarceration. On direct appeal, we affirmed the judgment of conviction. *State* v. *Jenkins*, 24 Conn. App. 330, 588 A.2d 648, cert. denied, 219 Conn. 903, 593 A.2d 132 (1991).

We determined in *Jenkins* that the jury reasonably could have found the following facts. "On July 26, 1988, twelve police officers converged on an apartment on Hampton Street in Hartford to execute a search warrant for narcotics, drug paraphernalia and weapons. When the police arrived, the apartment was occupied by a female tenant, her two year old child, a twelve year old child, and by another woman, the [petitioner], and six other males. The officers' initial attempts to gain entry without force failed when the [petitioner] threatened to shoot the officers if they set foot inside the unit. Because of the [petitioner]'s threat, a two hour standoff ensued during which the police called in an emergency response team, notified a hostage negotiator, and evacuated a family from a nearby apartment. The episode caused a crowd, estimated at between 300 and 400 people, to gather outside the building. The police called for backup units to bring sledgehammers to break down the door.

"A refrigerator blocked the first door that the police tried to open. Following their successful forced entry at a second door, Sergeant Frank Campbell and Detective Peter Getz encountered the [petitioner] brandishing a gun and holding the two year old. The officers also observed several other people in the unit. The [petitioner]'s threats to shoot the officers compelled them to back out of the apartment. From their position in the stairway, the police shouted for the [petitioner] to release the women and children. The door then opened and the two women and the twelve year old child emerged. The two year old appeared in the doorway, but the [petitioner] quickly pulled the child back and slammed the door.

"Meanwhile, Officer Paul Kutcher, who was positioned outside the building, observed several people in the apartment throwing things into the sink. Kutcher also saw the [petitioner] hold the now crying two year old out the window, shielding himself with the child while shouting threats to the police and attempting to incite the crowd. The police in the stairway heard male voices yelling from inside the apartment that they wanted to surrender. The police told them to crawl out on their stomachs one at a time. Several males exited the apartment in this fashion, leaving only the [petitioner], the child and another male in the unit.

"The police were subsequently approached by the [petitioner]'s attorney, who had apparently been contacted by the [petitioner] during the standoff. The attorney talked with the [petitioner] from outside the apartment door. As a result of this conversation, the [petitioner] released the child and surrendered to the police. The subsequent search of the apartment yielded the following evidence: a handgun and bullets, a gram scale with cocaine residue, vial containers and caps, .38 caliber bullets and a police radio scanner. All of these items were introduced at trial as indicative of a drug outlet operation." Id., 331–33.

Following the disposition of the petitioner's direct appeal, he instituted a habeas corpus proceeding. In a revised amended petition dated December 9, 1996, the petitioner claimed that the prosecutor, assistant state's attorney Christopher Morano, "wrongfully told the jury that the petitioner had been convicted of certain felonies and advised the jury that they could use the petitioner's criminal record to discredit his credibility and . . . wrongfully offered the jury his own opinion as to the veracity of the testimony of Edgar Leon Perry, a defense witness." The petitioner alleged that such conduct constituted prosecutorial misconduct and that, because his

trial counsel failed to object to the prosecutor's statements, failed to request a curative instruction and failed to file a motion for mistrial, he was denied the effective assistance of counsel.[2] It is undisputed that the petitioner did not testify at trial and that there was no evidence that he had any felony convictions.

At the habeas trial, the petitioner's trial counsel, William T. Gerace, was called as a witness. Gerace testified that, by the time of the habeas trial, he had no specific recollection of the trial and, because the file was shredded, he could not refresh his recollection with notes. He did testify that the reference to the petitioner in connection with felony convictions appeared to be inadvertent. The habeas court noted that Gerace "testified that as a general proposition counsel should never object during final argument because jurors view interruptions as rude and upsetting. He stated that if he had objected he would have brought an inappropriate focus to the petitioner at that time." Gerace had no recollection of the other remarks of the prosecutor of which the petitioner complained and, therefore, could offer no tactical reasons beyond his general disinclination to object during closing argument.

Louis Avitable, an attorney, testified as an expert witness on the petitioner's behalf. The habeas court noted that Avitable testified that there was no reason based on sound trial tactics or strategy for trial counsel not to have objected to the prosecutor's allegedly improper statements and not to have asked the court for immediate curative instructions to the jury.

The habeas court focused on six comments of the prosecutor that it deemed improper. Those comments

---

[2] The revised amended petition raised several other issues, which the habeas court did not decide in the petitioner's favor. The petitioner has neither cross appealed nor filed alternate grounds of affirmance. We, therefore, consider only the grounds of appeal raised by the respondent.

will be set forth as they become relevant in the context of the respondent's specific claims. Additionally, the habeas court found that the prosecutor improperly argued facts not in evidence and interjected a personal opinion when he "made a representation to the jury concerning the processing of police brutality complaints. This information was not otherwise before the jury." The habeas court concluded that "counsel's failure to object during closing argument to the assistant state's attorney's statement that the [petitioner] had a criminal record, to his personal comments on the credibility of defense witnesses, and to his statement concerning the role of his office in prosecuting claims of excessive police force, together with his failure to seek curative instructions and a jury charge specifically geared to the offending remarks render the results of the petitioner's trial unreliable." The habeas court found that, but for counsel's failures as stated, there is a reasonable probability that the jury would have had a reasonable doubt as to the petitioner's guilt. In making this assessment, the habeas court noted that "while none of the comments made by the assistant state's attorney were egregious, the statements were all directed to factors and issues central to the proof of the state's case with the exception of attorney Morano's misstatement that Jenkins had a felony record."

At the outset, we note that the trial court, in its instructions to the jury, explained: "In reaching your verdict, you should consider all the testimony and the exhibits received into evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. . . . [A]rguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their closing arguments and in their questions or any comments to the court is intended to help you to interpret the evidence or me to interpret the law, but it is not evidence. If the facts,

as you remember them, differ from the way the lawyers have stated them, your memory and yours alone controls."[3] The trial court, however, gave no instructions concerning the prosecutor's specific comments.

The trial court also instructed the jury on the credibility of witnesses, explaining that "[t]he credibility, the believability of the witnesses and the weight to be given their testimony are matters entirely within your hands" and that "[t]he credibility of the witness and the truth of the facts is for you to determine." The court again instructed the jury that prior convictions could only be used to assess a witness' credibility. The court explained that "[a] witness' criminal record has no bearing on the guilt or nonguilt of the [petitioner], Mr. Jenkins, but only affects the witness'—that particular witness' own credibility." The trial court drew the jury's attention to Perry and explained again that "I'm highlighting him because [his criminal record] was mentioned in argument . . . [and] that can only be used by you in helping you evaluate Mr. Perry's credibility and for no other purpose."[4]

We also note that the habeas court referred to the important role of witness credibility in the case and stated that it was assessing the various "statements [of the prosecutor] collectively in the context of the strength and character of the state's evidence. In that regard, while the jury deliberations lasted less than two hours, the state's evidence was contested by defense counsel's rigorous and probing cross-examinations and

---

[3] Additionally, the prosecutor prefaced his argument with the following remark: "The facts that you're going to hear from myself and from [defense counsel] are our perceptions of the facts but they're not what really counts. What counts is your perception of the facts and if at some point, my perception of the facts is in conflict with your perception of the facts, please, I'm not trying to mislead you. It's the way I recall it; but what you recall is the most important."

[4] During the trial, the trial court also gave appropriate instructions limiting the use of felony convictions to evaluating credibility.

by presentations of defense witnesses whose testimony contradicted the state's evidence of the petitioner's criminal culpability." The habeas court further acknowledged that "defense counsel was well prepared for trial and conducted a competent and professional defense throughout the evidentiary phase of the trial."

On appeal, "[t]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

The standard to be applied by habeas courts in determining whether an attorney has effectively represented a criminal defendant is set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. *Phillips* v. *Warden*, 220 Conn. 112, 132, 595 A.2d 1356 (1991). Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland* v. *Washington*, [supra, 694]. In this context, a 'reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different,' does not require the petitioner to show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' Id., 693. Rather, it merely requires the petitioner to establish 'a probability sufficient to undermine confidence in the outcome.' Id., 694." *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 445–46, 610 A.2d 598 (1992).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* v. *Washington*, supra, 466 U.S. 691. "Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a defendant must show that there is a reasonable probability that the errors affected the outcome of the proceeding. Id., 694.

A habeas court "hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id., 695–96.

" 'This court does not retry the case or evaluate the credibility of the witnesses.' *State* v. *Amarillo*, [198

Conn. 285, 289, 503 A.2d 146 (1986)]." *State* v. *Taylor*, 23 Conn. App. 426, 429, 580 A.2d 1004 (1990). " 'Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . .' *State* v. *Mejia*, [233 Conn. 215, 224, 658 A.2d 571 (1995)]." *State* v. *McClam*, 44 Conn. App. 198, 208, 689 A.2d 475, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). "In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Internal quotation marks omitted.) *Clarke* v. *Commissioner of Correction*, 43 Conn. App. 374, 386, 682 A.2d 618, cert. granted on other grounds, 239 Conn. 945, 686 A.2d 120 (1996). Further, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* v. *Washington*, supra, 466 U.S. 689; see also *Johnson* v. *Commissioner of Correction*, 222 Conn. 87, 98, 608 A.2d 667 (1992).

I

The respondent first claims that the habeas court failed to apply the *Strickland* presumption that counsel's acts and omissions constitute reasonable tactical decisions. The respondent argues that, although the habeas court correctly stated the *Strickland* presumption, it failed to apply that presumption to the facts of the case. We are not persuaded.

There is no question that the habeas court stated the appropriate *Strickland* language.[5] The respondent

---

[5] In its memorandum of decision, the habeas court stated the following: "The *Strickland* court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a

directs our attention, however, to a comment in the habeas decision that he claims indicates that the habeas court rejected the presumption entirely. In the course of discussing the prosecutor's comments concerning witness credibility, the habeas court referred to Gerace's testimony regarding his usual practice of not objecting during closing argument. In so doing, the habeas court stated: "Aside from these general notions, attorney Gerace articulated no tactical reason for not having objected to any of the improper comments and the court will not assume the presence of any now forgotten tactic which might have motivated counsel's muteness in the face of these several improper comments." We find that this statement indicates that the habeas court did not disregard the *Strickland* presumption.

Our review of the record reveals that the habeas court clearly was aware of the *Strickland* presumption when it considered the issues. Because the habeas petition

---

defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' (Citations omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689–90; *Quintana* v. *Warden*, 220 Conn. 1 [593 A.2d 964] (1991); *Williams* v. *Warden*, 217 Conn. 419 [586 A.2d 582] (1991); *Jeffrey* v. *Commissioner*, 36 Conn. App. 216 [650 A.2d 602] (1994).

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that, 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Strickland* v. *Washington*, supra, 466 U.S. 687."

was filed more than seven years after the original trial and the habeas proceeding took place several months thereafter, trial counsel had no specific recollection of the events of the trial or his tactical decisions. He did, however, offer testimony with respect to his usual trial tactics. The habeas court credited those tactics but concluded that the nature of the prosecutor's comments, although not egregious, required intervention by defense counsel. The habeas court stated: "Though the court undertook and generally agrees with the notion that counsel should avoid interrupting a lawyer during closing argument, this general presumption must give way if the argument is improper, pertinent to significant trial issues and harmful." We cannot conclude, on the basis of the habeas court's reasoning, that the habeas court failed entirely to apply the presumption. Rather, it appears that the habeas court believed that that presumption was overcome in this case by other circumstances, in particular, the need to take corrective action with regard to the prosecutor's comments.

## II

The respondent next claims that the habeas court improperly found that counsel's performance was deficient for failing to object to the prosecutor's argument regarding the credibility of four of the five defense witnesses. Specifically, the respondent claims that the habeas court improperly found that five comments made by the prosecutor in his closing argument[6] were

[6] In its memorandum of decision, the habeas court noted the following statements made by the prosecutor: "Referring to defense witness Ealy, attorney Morano stated: 'Again, regarding his recollection of the facts, I'll just briefly go over it. *I submit to you his credibility was minimal.*' Referring to defense witness Moreland, attorney Morano stated: 'He stated although he was arrested with Mr. Jenkins and saw him almost on a daily basis, they never discussed the case until a week ago. *I find that hard to believe.*' Concerning defense witness Perry, attorney Morano stated: 'He claims that he and Mr. Jenkins never discussed this case even prior to his incarceration. *Again, I find that hard to believe.*' With respect to attorney Wesley Spears,

inappropriate expressions of his personal opinion and, therefore, improperly concluded that defense counsel's failure to object to such statements, to seek curative instructions and to request specific jury charges rendered the results of the trial unreliable. We agree.

In determining whether counsel's failure to object to the prosecutor's remarks was unreasonable, we must first ascertain whether the prosecutor's remarks were, in fact, improper. To make such a determination, we do not scrutinize each individual comment in a vacuum, but rather "we must review the comments complained of in the context of the entire trial." *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993). It is in that context that the remarks in question must be shown to have been so prejudicial that the entire proceedings were tainted. Id.

"While a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Consequently, the state must avoid arguments which are calculated to influence the

---

attorney Morano commented: 'Mr. Spears, not much I can say about Mr. Spears. I want to preface my remarks by saying I don't feel that he was trying to tell untruths on the stand. I don't think he would do that. I'm thankful that he was at the scene to assist in ending it. However, I do think his relation to Mr. Jenkins would motivate him to try to portray Mr. Jenkins in the best possible light. Why? He's his attorney. Secondly, Mr. Jenkins has referred him clients. Third, he's an attorney, he's looking out for the best interests of his client. While he's not his attorney in this particular case, he's still his attorney and has been and was at that time.'

\* \* \*

"In the rebuttal portion of his argument, attorney Morano made the following additional personal comments concerning the credibility of a defense witness: 'Edgar Leon Perry. Again, as I stated earlier, I believe Mr. Perry's testimony is tainted by extreme loyalty to Mr. Jenkins. . . . I submit to you that Mr. Perry is not bothered by going to jail. He's a very cold and calculated person. Don't look at jail through your eyes. Look at it through his. He may be saying, "Hey, I don't care. I'm in jail now." ' " (Emphasis in original.)

passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Bova*, 240 Conn. 210, 243–44, 690 A.2d 1370 (1997). It is well settled that a "prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. . . . Nor may he express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 541–44, 529 A.2d 653 (1987).

It does not follow from this, however, that every use of rhetorical language is improper. We emphasize that closing arguments of counsel "are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Glenn*, 194 Conn. 483, 495, 481 A.2d 741 (1984). Therefore, because closing arguments often have a rough and tumble quality about them, "some leeway must be afforded to the advocates in

offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument."[7] (Internal quotation marks omitted.) *State* v. *Abdalaziz*, 45 Conn. App. 591, 605, 696 A.2d 1310, cert. granted on other grounds, 243 Conn. 902, 701 A.2d 334 (1997). Inherent in this latitude is the freedom to argue reasonable inferences based on the evidence presented at trial. See *State* v. *Moore*, 49 Conn. App. 13, 28, 713 A.2d 859 (1998).

The mere use of phrases such as "I submit," "I find," or "I believe" does not constitute improper argument. *United States* v. *Eltayib*, 88 F.3d 157, 173 (2d Cir.), cert. denied, 519 U.S. 1045, 117 S. Ct. 619, 136 L. Ed. 2d 543 (1996); *United States* v. *Patterson*, 23 F.3d 1239, 1250–51 (7th Cir.), cert. denied, 513 U.S. 1007, 115 S. Ct. 527, 130 L. Ed. 2d 431 (1994); *United States* v. *Freisinger*, 937 F.2d 383, 385–86 (8th Cir. 1991). "Use of the personal pronoun 'I' is a normal and ordinary use of the English language. If courts were to ban the use of it, prosecutors would indulge in even more legalese than the average lawyer, sounding even more stilted and unnatural." *United States* v. *Freisinger*, supra, 385–86. On the other hand, it is improper for a prosecutor to vouch for a

---

[7] We further note that the occasional use of such rhetorical devices is simply fair argument. *United States* v. *Nersesian*, 824 F.2d 1294, 1328 (2d Cir.), cert. denied, 484 U.S. 958, 108 S. Ct. 357, 98 L. Ed. 2d 382 (1987). If every rhetorical remark made by counsel were ground for a reversal, "comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." (Internal quotation marks omitted.) *State* v. *Laudano*, 74 Conn. 638, 646, 51 A. 860 (1902). For an illustration of how natural it is to use such rhetorical devices, we need look only to defense counsel's closing argument, in which he stated: "Edgar Leon Perry came out of that lockup and *if he wasn't telling the truth, I don't know who was.*" (Emphasis added.)

witness' credibility. *State* v. *Williams*, supra, 204 Conn. 541–44. While a prosecutor may not interject personal opinion about the credibility or truthfulness of a witness, he may comment on the credibility of the witness as long as the comment reflects reasonable inferences from the evidence adduced at trial. See *United States* v. *Patterson*, supra, 1250; see also *State* v. *Moore*, supra, 49 Conn. App. 28; *State* v. *Sherman*, 38 Conn. App. 371, 396, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

Undoubtedly, using the pronoun "I" in an argument increases the chances that appropriately structured arguments will deteriorate into expressions of personal opinion. Prosecutors should be circumspect and artful in designing their arguments to avoid having a jury misinterpret such remarks as improper expressions of personal opinion. In the present case, although the prosecutor was careless in his use of the first person singular in arguing about the witnesses' testimony, we do not agree with the habeas court's interpretation that the comments were expressions of the prosecutor's personal beliefs about the witnesses' credibility. Our review of the record leads us to conclude that the prosecutor did not inject his personal beliefs or opinions into his argument. The prosecutor did not personally guarantee the witnesses' credibility or imply that he had knowledge of the witnesses' credibility obtained outside of the record. In all five instances, we find that the prosecutor was merely commenting on the inferences that could be drawn from the evidence about the credibility of the witnesses. Because those inferences were supported by the evidence, the remarks were not improper. Therefore, defense counsel's performance was not deficient because he was under no obligation to interrupt the closing argument with

objections, seek curative instructions or request specific jury charges.

### III

The respondent next claims that the habeas court improperly found that counsel's performance was deficient for failing to object to the prosecutor's misstatement involving the petitioner and a prior felony conviction of Perry, a defense witness. We agree.

During closing argument, the prosecutor argued that Perry lacked credibility. In so doing, the prosecutor inadvertently used the petitioner's name in place of Perry's name.[8] During the trial, evidence was offered that Perry had been convicted of those offenses. It is

[8] In discussing Perry's credibility, the prosecutor stated the following: "Edgar Leon Perry was an interesting witness. A very interesting witness. He was very cool, calm and calculated, but, again, he was arrested the same night. He knew Mr. Jenkins the longest period of time, ten to fifteen years. They're very close friends. Again, saw each other almost every day. He claims that he and Mr. Jenkins never discussed this case even prior to his incarceration. Again, I find that hard to believe. Two people arrested in a bizarre situation such as this would never discuss it after the incident occurred.

"Interesting point here, you may recall that when he was testifying as to the time he threw the gun out, he mentioned—and corrected me—after the second knock. Now, for someone who's never discussed the case with anyone for a year and never had anyone tell him anything about the case, I find it rather interesting that he would recall the significance of the knocks here. Maybe I'm making to big a thing out of something but I found that to be rather intricate and rather interesting point that may reflect upon his credibility regarding his statements of never discussing this either prior to his incarceration or since his incarceration.

"You have to examine his testimony, again, in the area of bias and credibility. *Certainly, he has a bias in favor of Mr. Jenkins and this is displayed by his testimony. Credibility. Again, Mr. Jenkins has felony convictions. Robbery in the third degree, failure to appear in the first degree. This can be used against his credibility.* In addition, while we have discussed his bias for the defendant, there's also the area of his bias against the state due to his pending cases. . . . In short, Mr. Perry appears to be a very loyal friend to Mr. Jenkins but don't let the appearance of this loyalty create an appearance of being honorable." (Emphasis added.)

undisputed that the prosecutor's reference to the petitioner was an inadvertent misstatement to which counsel did not object.[9] Essentially, the habeas court found that, inadvertent as it was, defense counsel had an obligation to ensure that the jury did not attribute the felony convictions to the petitioner. The habeas court did not conclude that defense counsel had actually heard the remark and consciously chose to ignore it so as not to draw the jury's attention to it. Although defense counsel had no recollection of the misstatement, he testified that his general rule of not objecting during closing argument would have justified his not objecting in this instance.

When viewed in the context of the entire trial, which commenced on October 23, 1989, and concluded on November 7, 1989, and of the closing argument of counsel, the transcription of which was nearly seventy pages, it is likely that the jury would have understood the statement to be inadvertent.[10] See *State* v. *Bova*, supra, 240 Conn. 244 (statements that appear inflammatory in isolation may not be unfair or unduly prejudicial viewed in context of entire case). There was no question that the evidence adduced at trial attributed the convictions to Perry and that no evidence linked any convictions to the petitioner. In addition, the trial court correctly instructed the jury regarding the use of Perry's convictions as to his credibility.

Two general principles guide our decision on this matter. The first is that the right to counsel is the right to

[9] The respondent points out that other inadvertent misstatements occurred during the trial. At one point, defense counsel confused the petitioner's name with that of a defense witness. On at least two occasions, the trial court addressed the prosecutor using defense counsel's name. The prosecutor referred to defense counsel as attorney Spears, using the name of a defense witness.

[10] The habeas court noted that, in the trial transcript, the recorder recognized the misstatement and typed the term "sic" following the reference to the petitioner.

effective assistance and not to perfect representation. *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 701, 652 A.2d 1050, cert denied, 233 Conn. 912, 659 A.2d 183 (1995). The second is that juries "are not required to leave common sense at the courtroom door"; *State* v. *Maxwell*, 29 Conn. App. 704, 710, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, 509 U.S. 930, 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993), citing *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985); nor are they " 'expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct.' " *State* v. *Little*, 194 Conn. 665, 674, 485 A.2d 913 (1984); *State* v. *Roy*, 38 Conn. App. 481, 489, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996). In viewing the prosecutor's misstatement in the context of the entire trial, we conclude that defense counsel's performance in failing to interrupt the closing argument with an objection, to seek a curative instruction or to request a specific jury charge was not deficient.

## IV

The respondent further claims that the habeas court improperly found that counsel's performance was deficient for failing to object to the prosecutor's argument concerning the alleged excessive use of force by the police and the processing of police brutality complaints. In its memorandum of decision, the habeas court identified the following remark made by the prosecutor as improper: "Referring to testimony that the police had used excessive force, resulting in one of the men having two broken teeth and another transported to the hospital, attorney Morano stated: 'Believe me, it's my job and I'm very concerned about excessive force used by police officers. If that were to occur, it would be the office of

the state's attorney that would have to prosecute it but it has not been shown here to you and it should [not] distract you by again, one of Mr. Gerace's red herrings.' "

The petitioner did not raise this claim in his amended habeas petition nor did he raise it at the habeas trial. The petitioner raised the issue for the first time in his posttrial brief some six months after the habeas trial concluded. The habeas court determined, nonetheless, that the prosecutor's statement constituted improper personal opinion, based on information not in the record, concerning the petitioner's evidence as to excessive force used by the police. The habeas court also determined that defense counsel's failure to interrupt the closing argument with an objection, seek a curative instruction or request a specific jury charge constituted ineffective assistance.[11]

The respondent raises three arguments. First, the respondent asserts that the issue was not properly before the habeas court since it was not pleaded or litigated at trial. Second, the respondent argues that, even if properly raised, the prosecutor's comments should not be interpreted to be personal opinion as to whether excessive police force was used. The respondent suggests that the statement was no more than

---

[11] In addressing the issue, the habeas court observed that "attorney Morano made a representation to the jury concerning the processing of police brutality complaints. This information was not otherwise before the jury." Moreover, the court stated that "[t]his statement regarding his concerns about police brutality, and including the comment that such cases would be prosecuted by his office, suggested information not properly before the jury, and intimated a personal view that there was no merit to the testimony that the police had used excessive force. His comments could reasonably be construed as stating that the office of the state's attorney had found no merit to any claims of excessive force resulting from this occurrence. As such, this statement amounted to an improper vouching for the police officers that they did not use unreasonable force and, by implication, that there was no reason, based on fear of violence from the officers, for the petitioner to have refused to exit the apartment."

proper argument on the evidence. Finally, the respondent argues that, even if improper and objectionable, the petitioner suffered no prejudice as a result of counsel's failure to object.

"In a writ of habeas corpus alleging illegal confinement the application must set forth specific grounds for the issuance of the writ including the basis for the claim of illegal confinement." *Macri* v. *Hayes*, 189 Conn. 566, 568, 456 A.2d 1186 (1983). The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. *McPheters* v. *Pollard*, 146 Conn. 509, 510, 152 A.2d 632 (1959). "The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Wright* v. *Hutt*, 50 Conn. App. 439, 449, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations; *Gaines* v. *Manson*, 194 Conn. 510, 528, 481 A.2d 1084 (1984); it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. *Giannotti* v. *Warden*, 26 Conn. App. 125, 126 n.1, 599 A.2d 26 (1991) (where petitioner's claim of ineffective assistance of counsel not alleged in habeas petition, appellate court will not review claim raised for first time on appeal), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). " 'The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise.' " *Hasan* v. *Warden*, 27 Conn. App. 794, 798, 609 A.2d 1031, cert. denied, 223 Conn. 917, 614 A.2d 821 (1992).

In the present case, approximately six months after the habeas trial concluded, the petitioner raised the issue for the first time in his posttrial brief. Neither

trial counsel nor the petitioner's expert witness was questioned or testified about this statement at the habeas trial. In fact, at no time during the habeas trial was evidence presented concerning the prosecutor's argument regarding the excessive use of force or defense counsel's failure to object thereto. Nor do we see any indication in the record that the respondent was given an opportunity to present evidence on this issue. In deciding this issue, the habeas court denied the respondent notice and the opportunity to defend properly against the claim. We, therefore, conclude that the habeas court improperly concluded that counsel's performance was deficient for failing to object to the prosecutor's argument concerning the alleged excessive use of force by the police and the processing of police brutality complaints because these issues were not properly before the court.[12]

V

The respondent's final claim is that the habeas court improperly found that the petitioner suffered prejudice as a result of counsel's failure to object to the state's various arguments. Because we have concluded that

---

[12] Were we to review the petitioner's claim, it would be unnecessary for us to decide whether defense counsel's conduct was deficient, as the petitioner has claimed, because we would find that he has suffered no prejudice as a result of the claimed error. See *Aillon* v. *Meachum*, 211 Conn. 352, 362, 559 A.2d 206 (1989) (court need not determine whether counsel's performance was deficient before examining prejudice suffered by defendant as result of alleged deficiencies). To establish prejudice arising from the deficient performance of counsel, a petitioner must show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* v. *Washington*, supra, 466 U.S. 694. Even if we were to assume that the prosecutor's remarks were improper, our review of the record leads us to conclude that these remarks, when viewed in the context of the whole trial, did not rise to the level of substantial prejudice. The petitioner failed to meet his burden to show that there was a reasonable probability that, if defense counsel had objected to these remarks, the fact finder would have had a reasonable doubt with respect to his guilt. See *Jeffrey* v. *Commissioner of Correction*, supra, 36 Conn. App. 220–21.

defense counsel's performance was not deficient, we need not address this final claim. See *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 445–46.

The judgment is reversed and the case is remanded with direction to render judgment denying the petition for habeas corpus.

In this opinion the other judges concurred.

