### STATE OF CONNECTICUT *v.* MARC S. SINVIL
### (AC 22239)

Mihalakos, Flynn and McDonald, Js.

Argued December 10, 2002—officially released May 20, 2003

*Carlos E. Candal,* for the appellant (defendant).

*Ronald G. Weller,* assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* state's attorney, *Leon F. Dalbec, Jr.,* senior assistant state's attorney, and *David J. Smith,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Marc S. Sinvil, was convicted following a jury trial of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2), and unlawful restraint in the second degree in violation of General Statutes § 53a-96. On appeal from the judgment of conviction for those crimes, the defendant claims that the prosecutor engaged in a pattern of misconduct through certain comments made during

closing argument.[1] We reverse the judgment of the trial court because we conclude that the challenged prosecutorial argument was improper and deprived the defendant of a fair trial.

The jury reasonably could have found the following facts. The defendant and the victim's husband, B, had been friends for several years.[2] The defendant came to know the victim, A, through his relationship with B. All three were originally from Haiti. After having known each other for several years, the defendant and A's family moved to Norwich at approximately the same time. The friendship between the defendant and B was such that B gave the defendant a key to his family's apartment. The defendant would visit B almost every day. The defendant and B would play cards together at B's apartment, and the defendant frequently had meals there. Using the key given to him, the defendant also would spend time at his friend's apartment even when B and A were not there.

In time, both the defendant and B obtained jobs at Foxwoods Casino. The defendant worked as a bus driver, and his scheduled working hours were generally from 4 p.m. until approximately midnight.[3] B worked in a different department and usually was scheduled to work until 2 a.m.

---

[1] The defendant also claims that the inquiry conducted by the court into an instance of possible juror bias was insufficient to protect his right to a trial by a fair and impartial jury and that he was deprived of a fair trial due to the actions of an interpreter. Because we conclude that a new trial is warranted due to the improper argument of the prosecutor and because these other issues are not likely to recur at the new trial, we do not address these issues.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. We therefore refer to the victim and her husband as A and B, respectively. See General Statutes § 54-86e.

[3] The defendant testified that on the night of the incident he worked until 11:30 p.m.

A and the defendant were the two principal witnesses at trial. A testified that at approximately 12:30 a.m. on September 28, 1999, she was sleeping alone in the bedroom she shared with B, while her two sons were sleeping in an adjacent bedroom. A testified that she awoke to find somebody behind her in bed. At first, she believed it to be B, but she turned and discovered that it was the defendant. According to her, she and the defendant struggled, during which time the defendant told her that he loved her and he wanted to have sex with her. She related that the defendant held her hands down as he touched her under her nightgown. At some point, A could feel the defendant becoming aroused. A managed to calm the defendant, and she was able to get to her bathroom and lock herself inside. The defendant stayed for a short time, calling to A from outside of the bathroom, but he eventually left. When B got home from work at approximately 2:30 a.m., A did not tell him what had happened that night.

Approximately two days later, after speaking about the incident with two coworkers and B, A did contact the police. The defendant was arrested and charged with sexual assault in the fourth degree and unlawful restraint in the second degree.

The defendant testified on his own behalf at trial. According to the defendant, he and A had engaged in a continuing consensual extramarital sexual affair over several months. The defendant testified that A and B argued frequently, and that she had turned to their mutual friend, the defendant, for comfort. He claimed that the incident of September 28 was actually a consensual sexual encounter which began in A's kitchen, where she met the defendant that night, and proceeded to the bedroom. At trial, the defendant maintained that A had accused him of attacking her to protect her reputation in the community.

The jury found the defendant guilty of both counts. Further factual information will be provided as it relates to the various claims raised by the defendant.

The defendant's claim relates to certain comments made by the prosecutor during closing argument.[4] The defendant claims that during closing argument, the prosecutor engaged in misconduct which deprived the defendant of a fair trial. We agree with the defendant.

Before we begin our analysis of the defendant's claim, we note that he failed to object to all but one of the allegedly improper remarks that he claims deprived him of his right to a fair trial. Furthermore, the defendant fails to request that we review those unpreserved claims under either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine; see Practice Book § 60-5; and we, therefore, decline to consider his arguments as to those remarks. See *State* v. *Spillane*, 69 Conn. App. 336, 342, 793 A.2d 1228 (2002). Nevertheless, the portion of the prosecutor's closing argument to which the defendant did object was improper and, under the circumstances of this case, is

[1] The defendant also argues that a certain portion of the state's cross-examination of him was improper because the court allowed him to be impeached by his prior statements made during a telephone conversation with A and B. When the court asked for a foundation for the line of questioning, the prosecutor responded that he had the conversation on tape. The defendant admitted that his testimony at trial was different from what he said in that telephone conversation. The prosecutor, however, never offered the tape into evidence. The defendant asserts that this procedure was improper, but fails to cite a single case, statute or rule of evidence in support of his position. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Beverly*, 72 Conn. App. 91, 102, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002). Moreover, the defendant failed to object to the prosecutor's mentioning the tape during cross-examination, and failed to request review under either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error rule. See Practice Book § 60-5.

sufficient to lead us to the conclusion that the defendant's conviction was a denial of his due process right to a fair trial. As to the portion of the prosecutor's closing argument to which the defendant did object, thus preserving the issue for appeal, we begin by setting forth our standard of review.

"We have long recognized the special role played by the state's attorney in a criminal trial. He is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment." (Internal quotation marks omitted.) *State* v. *Alexander*, 254 Conn. 290, 302, 755 A.2d 868 (2000). "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 538, 529 A.2d 653 (1987).

Our standard of review first requires us to examine the nature of the prosecutor's conduct to determine whether the statements were improper and, if so, to determine whether the defendant has demonstrated "substantial prejudice," i.e., that "the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." *State* v. *Alexander*, supra, 254 Conn. 303.

As did the defendant in *State* v. *Williams*, supra, 204 Conn. 523, the defendant here claims that the improper remarks of the prosecutor deprived him of a fair trial. In analyzing whether those remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [w]e do not focus alone . . . on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) Id., 539–40. In making this determination, we focus on several factors, including "(1) the extent to which the misconduct was invited by defense conduct or argument, (2) the severity of the misconduct, (3) the frequency of the misconduct, (4) the centrality of the misconduct to the critical issues in the case, (5) the strength of the curative measures adopted and (6) the strength of the state's case." *State* v. *Cruz*, 71 Conn. App. 190, 205–206, 800 A.2d 1243, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002); see also *State* v. *Singh*, 259 Conn. 693, 723, 793 A.2d 226 (2002); *State* v. *Williams*, supra, 540.

We now turn to the particular portion of the prosecutor's closing argument at issue. During the prosecutor's rebuttal, the following argument was made:

"[Prosecutor]: [I]f a man comes into the apartment while you're sleeping and he gets into bed with you and if, whether her statement is true, she didn't expect it, she didn't invite him, pins her down, holds her down, I believe, and fondles her breasts, that's not a minor incident. I think she said she was afraid something more was going to happen. That's a pretty major incident. That's pretty, pretty horrendous, actually, if you think about what's happening; even more horrendous if the kids were in the other room. She doesn't know what's going to happen to the kids. It makes perfect sense that

she's not going to scream out, because she—and I'll—I'll tell you—

"[Defense Counsel]: Objection.

"[Prosecutor]:—a large portion of this trial I was kind of burnt out on what was going on. I was having a hard time focusing.

"[Defense Counsel]: Objection.

"[Prosecutor]: I probably should have asked her why she didn't scream—

"The Court: What? Is there an objection? What?

"[Defense Counsel]: I don't—his personal statement.

"The Court: His personal statement when you're going, 'I believe,' 'I hope.' Yes, making personal statements is objectionable.

"[Prosecutor]: Okay. I don't think I made a mistake on credibility. I just think that my failure to do something—

"The Court: All right. Because you haven't. You haven't.

"[Prosecutor]: Okay. It should have been asked of her about the kids. I—I missed—I should have asked her, but the husband came on and said, 'Room—doors—closing the room.' They also sleep with the television on a lot. It makes perfect sense that he would—when he came in. There was no testimony from her or from the defendant that there was any screaming or any loud noise going on. Just that he pinned her down and she was afraid. And she was talking to him, 'get off, get off. I don't want to do this,' and that she was afraid that it escalated and she would be raped. So, I want you to keep that in mind. It's a pretty serious act of what happened."

The defendant claims that, in the course of the state's closing argument excerpted here, the prosecutor made improper comments on facts that were not in evidence. We agree with the defendant.[5]

We now turn to the first step in our analysis of whether the defendant was deprived of his due process right to a fair trial by first determining whether summation statements made by the prosecution were improper. If they were not improper, there would be no need to address the second stage of analysis concerning whether substantial prejudice resulted to the defendant.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Alexander*, supra, 254 Conn. 306.

We focus on the prosecutor's rebuttal closing argument in which he stated that during "a large portion of this trial I was kind of burnt out on what was going on. I was having a hard time focusing." The prosecutor also remarked that he "probably should have asked [A] why she didn't scream." The prosecutor's own physical or mental condition, the questions that he should have asked, and a lawyer's trial strategy generally are not permissible subjects of closing argument. See *Spiess* v. *Traversa*, 172 Conn. 525, 527, 375 A.2d 1007 (1977) (holding improper counsel's argument that plaintiff was entitled to something for manner in which defense was conducted); *Archambeault* v. *Jamelle*, 100 Conn. 690,

---

[5] The defendant also argues that the prosecutor's remarks were improper because he was appealing to the emotions of the jury and vouching for the credibility of A. Because we agree that the remarks were improper comment on facts not in evidence, we need not address the defendant's remaining arguments as to these remarks.

693–94, 124 A. 820 (1924) (holding improper counsel's argument that opposing counsel knew why plaintiff delayed in bringing action where opposing counsel's knowledge was not in evidence). By making the challenged remarks, the prosecutor was not confining himself to the evidence in the record.

We note that the prosecutor's argument that he was "burnt out" violated rule 3.4 (5) of the Rules of Professional Conduct. Rule 3.4 (5) provides that a lawyer will be in violation of the rules if he or she "[i]n trial, allude[s] to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence . . . ." In criminal cases, our Supreme Court previously has cited with approval the American Bar Association (ABA) standards with respect to the prosecution and defense function, which require that the "prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law . . . ." (Internal quotation marks omitted.) *State* v. *Gold*, 180 Conn. 619, 659, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), quoting A.B.A., Standards Relating to the Prosecution Function and the Defense Function § 5.8 (d) (1971); see A.B.A., Standards for Criminal Justice (3d Ed. 1993) § 3-5.8.[6]

---

[6] A.B.A., Standards for Criminal Justice § 3-5.8 provides: "(a) In closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the record. The prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

"(c) The prosecutor should not make arguments calculated to appeal to the prejudices of the jury.

"(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence."

The prosecutor's remarks were an appeal to the jury's sympathies designed to cover a small but critical gap in the evidence. This was improper argument because "[a]n appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record." *State* v. *Alexander*, supra, 254 Conn. 307.

It was improper for the prosecutor during closing argument to attempt to affect the jury's decision by arguing facts not in evidence, namely, his own physical condition or the questions that he should have asked. See *Fonck* v. *Stratford*, 24 Conn. App. 1, 4, 584 A.2d 1198 (1991) ("[c]ounsel may not comment on or suggest inferences from facts not in evidence"). "While a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Consequently, the state must avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 357–58, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

Analyzing these remarks in light of the factors listed in *State* v. *Williams*, supra, 204 Conn. 540, we conclude that the improper remarks by the prosecutor warrant a reversal of the judgment of conviction. The prosecutor's remarks that he was "burnt out" during the trial and "having a hard time focusing" were made in response to defense counsel's argument that "if there was some sort of ruckus going on in the bedroom when the kids were sleeping in the other room, I think the kids would wake up in the middle of the night." In essence, defense counsel was arguing that the fact that A did not scream

upon finding the defendant in bed with her supported an inference that the encounter was consensual. While we do not condone defense counsel's use of the first person, we conclude that he was arguing one possible permissible inference *from the evidence.* This was proper argument and, therefore, we conclude that it did not invite a response in rebuttal which referred to irrelevant matters *not in evidence.*

By responding that he "probably should have asked her why she didn't scream" and that he was "burnt out," the prosecutor, even more than "diverting the jury's attention from their duty to decide the case on the evidence"; (internal quotation marks omitted) *State v. Chasse,* supra, 51 Conn. App. 358; impermissibly invited the jury to excuse the lack of evidence before it as to why A had not screamed. "What the law does require . . . is that after hearing all the evidence, if there is something in that evidence *or lack of evidence* which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted." (Emphasis added.) D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (3d Ed. 2001) § 2.9, p. 87. If there was a reasonable doubt based upon A's failure to cry out, that doubt was not excused by the prosecutor's invitation to the jury to speculate that a question he would have asked, had he not been "burnt out," would have resolved the issue. It was improper for the prosecutor implicitly to ask the jury to excuse a lack of evidence which otherwise might raise a reasonable doubt in the jurors' minds because of his personal "burnt out" condition or lack of "focus."

Although we conclude that there was only a single instance of improper argument preserved for our review, we have no bright line rule that a single instance of misconduct is insufficient to warrant reversal. The

frequency of prosecutorial misconduct is only one factor considered in determining whether the defendant's conviction amounts to a denial of due process, and no one factor in that analysis is dispositive. See *State* v. *Guzman*, 73 Conn. App. 683, 691, 809 A.2d 526 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).[7]

At no point did the court directly address the prosecutor's improper remarks. No curative instructions were given at the time of the improper remarks. The only instructions that appear slightly relevant to the prosecutor's remarks are contained in the court's charge to the jury when it stated: "You should not be influenced by whether you like me, the lawyers or anybody," and "You must not be influenced by any personal likes or dislikes, or prejudices or sympathy." We are not convinced that these general instructions to the jury were sufficient to cure the damage caused by the prosecutor's remarks.

Furthermore, the credibility of A versus that of the defendant was the critical issue for the jury to decide. It was central to the case. The state did not have an overwhelmingly strong case against the defendant. Compare *State* v. *Pereira*, 72 Conn. App. 545, 564–67, 805 A.2d 787 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). There were only two witnesses who

---

[7] In the course of his rebuttal argument, the prosecutor stated: "And I'll let you in on a little secret. Yes. They want him convicted because his wife was sexually assaulted. Because the victim was sexually assaulted. That's why they wanted him convicted." "[T]he jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . ." (Internal quotation marks omitted.) *State* v. *Santiago*, 73 Conn. App. 205, 219, 807 A.2d 1048 (2002), cert. granted on other grounds, 262 Conn. 939, 815 A.2d 673 (2003). Although the defendant did not object to this remark at the time it was made, it was clearly improper for the prosecutor to imply (by stating that he was letting the jury in on a secret) that he was exposing the jury to matters not in evidence. This remark, though not itself preserved for appeal, demonstrates that the improper remarks which warrant a reversal of the defendant's conviction were not isolated occurrences.

could testify as to what happened that night, A and the defendant. According to A, the defendant attacked her. According to the defendant, there was no attack, but he and A had been carrying on a consensual sexual affair for several months, and the incident at issue was a continuation of that affair. There was no physical evidence, however, to corroborate either version. In a case such as this where the jury's decision principally depends on which of two persons is found to be more credible, such improper remarks by a prosecutor during closing argument can tip the balancing of credibility in favor of the state. This is not "a case in which the state's evidence was so strong that we can say that there was harmless error." *State* v. *Williams,* supra, 204 Conn. 550. A conviction gained in such a manner amounts to a denial of due process of law. Id.

"[T]he burden is on the defendant to prove that the remarks made by the prosecutor were so prejudicial that he was deprived of the opportunity for a fair trial and [that] the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Richardson,* 214 Conn. 752, 760, 574 A.2d 182 (1990). In this case, that burden was not insurmountable given the single eyewitness and lack of physical evidence presented by the state. Although we are mindful of the balance that must be struck by a prosecutor in making his arguments to the jury; see *State* v. *Williams,* supra, 204 Conn. 538; in a case such as this, the prosecutor must be particularly circumspect in his speech and conduct to avoid introducing improper and irrelevant factors for the jury's consideration; see *Jenkins* v. *Commissioner of Correction,* 52 Conn. App. 385, 401, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999); on an issue where there was no evidence presented and where that deficiency could create reasonable doubt. We conclude that the defendant's conviction must be reversed and the case remanded for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.