STATE OF CONNECTICUT *v.* DAVID ABRAHAMS
(AC 22671)

Flynn, Mihalakos and McDonald, Js.

Argued May 7—officially released October 7, 2003

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, David Abrahams, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and criminal possession of a firearm in violation of General Statutes § 53a-217. The defendant was also charged with the commission of a class A, B or C

felony with a firearm in violation of General Statutes § 53-202k. On appeal, the defendant claims that his constitutional rights to due process and to a fair trial were violated as a result of prosecutorial misconduct. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Jacqueline Peton, were involved in a sometimes volatile, live-in relationship from December, 1994, until August, 2000, during which time they had a child. Prior to the relationship ending, the victim called the Danbury police in August, 2000, claiming that the defendant had violated the restraining order that she had obtained against him living with her. At that time, to give the victim "a taste of her own medicine," the defendant called her employer and reported that she was stealing cleaning products at work and selling them.

On November 1, 2000, the defendant went to the victim's apartment to see his son. When the victim did not allow him into her apartment, the defendant threatened to kill her and stated that he was going to report her to the department of children and families for child abuse. During the early evening hours of November 3, 2000, the defendant and the victim had an argument during a telephone conversation. After the victim hung up, the defendant repeatedly called her telephone number. Despite the defendant's objections, she went out that night with Ricky Cordiero. At approximately 5 a.m. on November 4, 2000, the victim returned to her apartment complex and observed the defendant sitting in his vehicle, a black Chrysler sedan with custom wheel rims. As the victim walked toward her building, the defendant ran to her with a gun in his hand and grabbed her. When she escaped, the defendant circled her and fired a series of shots at her, wounding her in the leg, elbow and buttocks. After the defendant's gun jammed,

as he left the scene, he told the victim, "I'm going to get you. I'm going to have somebody f*cking kill you."

The defendant was convicted after a jury trial. This appeal followed. On appeal, the defendant claims that the prosecutor engaged in misconduct by improperly referring to an absent witness, beyond the scope of the court's order as to what could be stated in closing argument to the jury about that witness, by making unnecessary reference to the defendant's postarrest incarceration, by giving unsworn testimony about matters not in the record and by asking the defendant to comment on the veracity of a witness.

The defendant failed to preserve his claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[1] or the plain error doctrine. See Practice Book § 60-5.[2] Because the record is adequate for review and a claim of prosecutorial misconduct affecting the fairness of the trial in violation of a fundamental right is of constitutional magnitude, we will review the defendant's claim under *Golding*. See *State* v. *Santiago*, 73 Conn. App. 205, 212, 807 A.2d 1048 (2002), cert. granted on other grounds, 262 Conn. 939, 815 A.2d 673 (2003).

---

[1] "Pursuant to *State* v. *Golding*, supra, 213 Conn. 233, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Santiago*, 73 Conn. App. 205, 212 n.10, 807 A.2d 1048 (2002), cert. granted on other grounds, 262 Conn. 939, 815 A.2d 673 (2003).

[2] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

"To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . . Prosecutorial misconduct may occur in the course of cross-examination of witnesses . . . . Moreover, prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fundamental fairness of the trial itself . . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. . . . Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . .

"As is evident upon review of these factors, it is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole. . . . We are mindful throughout this inquiry, however, of the unique responsibilities of the prosecutor in our judicial system. . . . If the accused be guilty, he [or she] should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." (Citations omitted; internal quotation marks

omitted.) *State* v. *Singh*, 259 Conn. 693, 699–702, 793 A.2d 226 (2002).

"[W]hether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any of the prosecutor's improper remarks. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial. . . . [S]ee also *State* v. *Andrews*, 248 Conn. 1, [20], 726 A.2d 104 (1999) (failure of defense counsel to object to prosecutor's rebuttal argument suggested that 'defense counsel did not believe that it was unfair in light of the record of the case at the time'); *State* v. *Robinson*, [227 Conn. 711, 746, 631 A.2d 288 (1993)] (failure to object to closing arguments indicated that defense counsel 'did not regard . . . remarks as seriously prejudicial at the time they were made')." (Citation omitted.) *State* v. *Reynolds*, 264 Conn. 1, 165, 836 A.2d 224 (2003). With those principles in mind, we will first examine whether the prosecutor's actions were improper. If we find the conduct to be improper, we must then determine whether the impropriety deprived the defendant of a fair trial.

I

The defendant claims that the prosecutor improperly referred to an absent witness, beyond the scope of the court's order as to what the prosecutor could state to the jury in closing argument about that witness. The defendant claims that the prosecutor exceeded the court's order by commenting on the absence of Eddie Lynch during closing argument. We disagree.

The following facts and procedural history are relevant to our resolution of that issue. During the defendant's testimony, he denied having shot the victim and claimed that at the time of the shooting, he was with

Lynch and Lynch's girlfriend, Olga Lopez. On cross-examination, the state asked the defendant why there was a call placed from the defendant's cellular phone to Lopez's house shortly after 5 a.m., when he had testified on direct examination that he was at Lopez's house at that time. The defendant responded that he had awoken to use the bathroom, and, while he was running to the bathroom, he tripped over Lopez's telephone cord. To be sure that he did not damage Lopez's telephone, the defendant testified, he used his cellular phone to call Lopez's number. Following his testimony, the defendant inquired of the court as to whether it would allow the state to comment to the jury on why Lynch and Lopez were not called to testify.

The court, after hearing from the state's investigator that he was able to locate and to speak to Lopez, stated: "I'm going to allow the state to make the appropriate comments as indicated in *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). The state can make an argument about the absence of Olga Lopez. And that the defendant didn't—hasn't asserted sufficient credible evidence to support his alibi, but the state is ordered not to directly exhort the jury to draw an adverse inference by virtue of that witness' absence."

During closing argument, the prosecutor stated: "[At] 5:10, 5:10 in the morning, right after the shooting, there's a call on the defendant's cell phone bill to Olga Lopez's house, the place he [is] supposed to be . . . according to his own testimony. [At] 5:34, look at the bill, there's another call to the same number, Olga Lopez's house. I'm arguing the reasonable inference is he's calling there, he's not there." The prosecutor at that time made no reference to the defendant's failure to call alibi witnesses.

During the defendant's closing argument, his attorney stated: "The state, I know, will raise the issue of Olga Lopez. The state's going to indicate that [the defendant's] alibi is [himself], there's no other witnesses, we didn't call any other alibi witnesses and that you should think about. And I simply point out that the state also has those witnesses available to discredit. We can use them, [and] the state can use them to discredit if they so choose. And I simply point out, because this is my last opportunity to speak to you, that neither side called these witnesses."

In response, the prosecutor, in rebuttal, stated: "[The defendant] took the [witness] stand. He chose to testify. And he told you he was with two other people. And he told you he was with Eddie Lynch, who is a friend of his, and Olga Lopez, [who] has a child with Eddie Lynch. He is the only one telling you that. The evidence of his alibi defense is solely from him. He's the only person we heard it through. And [his attorney] is correct, we both have subpoena power, but he's not my witness, he's the defendant's friend. Why would I bring him here?"

It is the defendant's claim that the prosecutor's comments in regard to Lynch were improper because those comments went beyond the scope of the court's ruling by commenting on the absence of Lynch. In support of his claim, the defendant relies on our Supreme Court's holding in *State* v. *Malave*, supra, 250 Conn. 722.

In *Malave*, our Supreme Court held that "we do not prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case. . . . [Such comment is allowed as] long as counsel does not directly exhort the jury to draw an adverse inference by virtue of the witness' absence . . . ." Id., 739.

We do not find the prosecutor's comments improper. During closing argument, the prosecutor's only mention of Lynch was in a single comment that defense counsel "is correct, we both have subpoena power, but he's not my witness, he's the defendant's friend. Why would I bring him here?" The state's comments regarding Lynch were in response to defense counsel's closing argument, which concerned the defendant's alibi and possible alibi witnesses, who were available to both the state and the defendant.

Moreover, the prosecutor did not argue to the jury that it should draw an adverse inference by virtue of the witness' absence. See *State* v. *Reynolds*, supra, 264 Conn. 199. Furthermore, the defendant did not object to the prosecutor's comments at trial, and "defense counsel's failure to object to the allegedly improper argument when it was made indicates that counsel did not consider it to be unfair or seriously prejudicial in light of the record of the case at the time." Id., 176. Accordingly, we do not find that the prosecutor's comments were improper.

II

The defendant claims that the prosecutor made unnecessary references about the defendant's incarceration after his arrest while questioning the defendant and during closing argument. We disagree.

The defendant claims that there were three instances in which the prosecutor asked him questions that indicated to the jury that he was incarcerated while awaiting trial. During cross-examination of the defendant, the prosecutor asked about a letter that the defendant had sent to the victim from jail while he was awaiting trial. The defendant objected to the question on the ground of relevancy and, after a sidebar conference, the prosecutor rephrased the question, omitting the reference to incarceration. Later, during the prosecutor's examina-

tion of the defendant, the prosecutor indicated to the court that he was going to "ask that question now because I think it is relevant now," an apparent reference to the question that led to the sidebar conference. Defense counsel then stated, "I thought about it, [I] don't have an objection." The prosecutor then asked the defendant two questions, without objection, relating to a letter sent during the defendant's pretrial incarceration. During closing argument, the prosecutor alluded to the defendant's incarceration, stating: "Do you think when you're in jail you can't make phone calls, talk to people? . . . He admitted in the letters, I asked him, he admitted writing, 'when I get out of jail, if you're still with Ricky I'm going to do what he did to us, interfere.' "

We do not find the prosecutor's references to incarceration improper. The defendant first objected and explicitly informed the court later that he had no objection. The defendant also failed to object to the prosecutor's comments during closing argument. See id. Furthermore, "[n]ot every reference to a defendant's pretrial incarceration is grounds for a mistrial." (Internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 628, 629 A.2d 1067 (1993). Moreover, the defendant fails to state how the prosecutor's comments were improper other than merely to state that the comments were "unnecessary and inappropriate." "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Sinvil*, 76 Conn. App. 761, 765 n.4, 821 A.2d 813, cert. granted on other grounds, 264 Conn. 916, 826 A.2d 1160 (2003). We conclude that the prosecutor's comments regarding the defendant's incarceration were not improper under the circumstances.

III

The defendant's next claim relates to comments that the prosecutor made about matters that were not in

evidence. On direct examination, the defendant testified that he had called the victim's employer and reported that she was stealing cleaning supplies from her employer and selling them to people "on the street." In closing argument, the prosecutor stated: "She depended on [the paycheck she received from her job], and [the defendant] threatened her livelihood by calling her place of employment and accusing her of stealing cleaning supplies and selling them on the street. Well, if she had been fired, certainly it would have helped the defendant control her because now she would need him for his financial support. But it didn't work, they didn't fire her. Now, I don't know—the defendant testified she was selling these cleaning supplies on the street. I don't know, and I've been a prosecutor not a long time, but I've never seen a case of selling Lysol on the street. I wasn't aware there was a hot market for cleaning products on the street. There is no evidence, but for what the defendant said, that this really happened."

It is the defendant's contention that those comments by the prosecutor, when there was no evidence introduced, amounted to misconduct. "It is well settled that [a] prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Ancona*, 69 Conn. App. 29, 37–38, 797 A.2d 1138, cert. granted on other grounds, 260 Conn. 928, 798 A.2d 970 (2002).

We agree that the prosecutor made comments about facts not in evidence from his personal knowledge. We conclude that the prosecutor's comments were improper. See *State* v. *Wickes*, 72 Conn. App. 380, 396,

805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002).

IV

The defendant also claims that the prosecutor committed misconduct by asking the defendant to comment on the credibility of another witness.

During the state's case-in-chief, the prosecutor called Brian Lamp as a witness. Lamp lived at the same apartment complex as did the victim and knew the defendant. Lamp testified that on November 3, 2000, at approximately 11:30 p.m., he drove into the apartment complex. He testified that it was only after he left his vehicle that he first saw the defendant sitting in a car parked by the curb, talking on a cellular phone. Lamp approached the defendant's vehicle and asked him if he wanted to get something to drink. The defendant declined and replied that he was going to Bridgeport. As Lamp went into the apartment complex, the defendant exited the parking lot.

While cross-examining the defendant, the prosecutor and the defendant had the following colloquy:

"[The Prosecutor]: Brian Lamp testified that you were—you pulled in the parking lot after him, didn't you?

"[The Defendant]: I don't remember, but I was already there.

"[The Prosecutor]: Okay. So, you're sure you were already there when Brian Lamp pulled in?

"[The Defendant]: Positive, because he was getting out of his truck when he saw me on the phone.

"[The Prosecutor]: So, if he testified that your car wasn't there when he pulled in and he noticed it after he got out of his car, then that's not accurate?

"[The Defendant]: I don't remember what he said. He could have said he doesn't remember. I don't remember what his testimony was.

"[The Prosecutor]: If that was his testimony, that he arrived before you, would that be inaccurate if that was his testimony?

"[The Defendant]: I mean, if he didn't see me, he just didn't see me. I don't know.

"[The Prosecutor]: Mr. Abrahams, it's really a question that can be answered in a yes or no fashion.

"[The Defendant]: I mean, if he said that he was there before I was, then that's his testimony. That's his testimony. But I know in fact that I was there first.

"[The Prosecutor]: So, the answer is, his testimony would be inaccurate?

"[The Defendant]: Basically, yes."

It is the defendant's contention that this line of inquiry improperly required him to comment on the credibility of Lamb. In support of that claim, he relies principally on *State* v. *Singh,* supra, 259 Conn. 693. In *Singh,* our Supreme Court addressed the "well established evidentiary rule that it is improper to ask a witness to comment on another witness' veracity." Id., 706. "[A]s a general rule, [such] questions have no probative value and are improper and argumentative because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." (Internal quotation marks omitted.) Id., 707–708. Further, asking witnesses to comment on the veracity of another witness' testimony can create a situation in which the jury may conclude "that, in order to acquit the defendant, it must find that the witness has lied." Id., 708.

The state argues that the prosecutor used the word "lying" in *Singh*, while in this case, the prosecutor used the word "inaccurate." If we were to adopt the state's view, we would create a distinction without a difference. Moreover, our Supreme Court in *Singh* rejected the contention that a different rule should apply when the prosecutor uses the word "wrong" as opposed to "lying." Id., 712 n.16. We therefore see no reason why it would be proper for a prosecutor to ask a witness to characterize another witness' testimony as inaccurate when it is improper to ask a witness to characterize another's witness' testimony as "wrong." "[Q]uestions that ask a defendant to comment on another witness' veracity invade the province of the jury." Id., 707. It was improper for the prosecutor to ask the defendant to comment on the credibility of Lamb's testimony. Unlike the situation in *Singh*, however, the prosecutor did not, in essence, argue that to acquit the defendant, the jury would have to find that Lamp had lied.

## V

Having concluded that the prosecutor's comments during closing argument about facts not in evidence and his questioning of the defendant to elicit comment on the credibility of a witness were improper, we now must address whether "the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) Id., 723. That determination requires us to consider several factors: The extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted and the strength of the state's case. Id., 700–701. After weighing those factors, we conclude that the defendant was not deprived of a fair trial.

The prosecutor's comments regarding the lack of a market for stolen cleaning supplies were brief, were not emphasized and did not pertain to the critical issue in the case. The comment concerned the defendant's testimony that he did call the victim's employer and reported that she was stealing the employer's cleaning supplies and selling them to people she met. The issue central to the case, however, was whether the defendant was so unhappy with the breakup of his relationship with the victim that he shot her. The defendant's attempt to adversely affect the victim's employment was itself evidence of his unhappiness with the victim, whether his report was true or not. See *State* v. *Moody*, 77 Conn. App. 197, 218, 822 A.2d 990, cert. denied, 264 Conn. 918, 827 A.2d 707 (2003).

We also note that the prosecutor's questioning of the defendant regarding the credibility of Lamp was not elevated during closing argument to require that the jury had to find Lamp to be a liar to acquit the defendant. See *State* v. *Reynolds*, supra, 264 Conn. 184. Additionally, the dispute between Lamp and the defendant was far removed from the center of the case, as it involved whether the defendant was in the victim's parking lot when Lamp arrived there five hours before the shooting or whether the defendant had followed Lamp into that lot at that time. In both instances, the defendant did not object to the prosecutor's conduct at the time that it occurred. That, our Supreme Court has stated, "indicates that counsel did not consider it to be unfair or seriously prejudicial in light of the record of the case at the time." Id., 176.

Moreover, the case against the defendant was very strong. The jury heard the victim, who lived with the defendant for four to five years before the incident and had had a child with him, positively identify the defendant as the individual who had approached and shot her repeatedly. Additionally, several witnesses saw

a vehicle similar to the defendant's dark Chrysler sedan with custom rims leaving the scene of the crime shortly after hearing gunshots. There also was evidence that the defendant had attempted to call the victim twelve times between 8 p.m. and 9:40 p.m. on the evening of November 3, 2000. On the basis of the overwhelming evidence of the defendant's guilt, the fact that the defendant did not object to the prosecutor's comments when they were made and the nature of the prosecutor's improprieties, we conclude that the defendant's trial, as a whole, was not fundamentally unfair.

Our Supreme Court and this court repeatedly have stated that it is improper for a prosecutor to make statements of personal belief, to imply or to claim knowledge of facts not in evidence and to ask a witness to comment on the truth of another witness' testimony.[3] Our Supreme Court also has made clear that we must place other factors in the balance to determine if the defendant nonetheless received a fair trial. See id., 164. If the defendant had not received a fair trial, a new trial would be required, with all that it attends; see *State* v. *Pouncey*, 241 Conn. 802, 699 A.2d 901 (1997); something that should be of concern to the division of criminal justice, which has the responsibility to train state's attorneys.

The defendant also seeks review under the plain error doctrine. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integ-

---

[3] See, e.g., *State* v. *Reynolds*, supra, 264 Conn. 163; *State* v. *Singh*, supra, 259 Conn. 706; *State* v. *Pouncey*, 241 Conn. 802, 811, 699 A.2d 901 (1997); *State* v. *Moody*, supra, 77 Conn. App. 213; *State* v. *Sinvil*, supra, 76 Conn. App. 769; *State* v. *Young*, 76 Conn. App. 392, 404, 819 A.2d 884, cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003); *State* v. *Ashe*, 74 Conn. App. 511, 524, 812 A.2d 194, cert. denied, 262 Conn. 949, 817 A.2d 108 (2003); *State* v. *Guzman*, 73 Conn. App. 683, 690, 809 A.2d 526 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003); *State* v. *Rogelstad*, 73 Conn. App. 17, 29–30, 806 A.2d 1089 (2002); *State* v. *Wickes*, supra, 72 Conn. App. 393.

rity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Saez*, 76 Conn. App. 502, 508, 819 A.2d 927, cert. denied, 264 Conn. 914, 826 A.2d 1158 (2003). As we have concluded, the prosecutor's improper comments did not rise to a level that infringed on the defendant's right to a fair trial and did not result in manifest injustice. Accordingly, plain error review is not warranted.

The judgment is affirmed.

In this opinion the other judges concurred.