STATE OF CONNECTICUT *v.* MICHAEL G. SMITH
(AC 25202)

Dranginis, Harper and Hennessy, Js.

Argued June 1—officially released August 30, 2005

*Richard S. Cramer*, for the appellant (defendant).

*Peter A. McShane*, senior assistant state's attorney, with whom were *Melissa Rutkoske*, certified legal intern, and, on the brief, *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Michael G. Smith, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in viola-

tion of General Statutes § 53a-217.[1] On appeal, the defendant claims that (1) the trial court denied him due process of law by admitting consciousness of guilt evidence, and (2) the prosecutor engaged in misconduct during rebuttal argument to the jury. We affirm the judgment of the trial court.

The jury reasonably could have found that the defendant, the victim, Eric Dames, and others were at a bar on Route 12 in Groton during the early morning hours of November 8, 2001. The victim was involved in a verbal and physical exchange with a group of men outside the bar, and he scuffled with the defendant. The victim broke away, and the defendant pursued him. The victim was shot in the back and died of his injuries. The defendant left the scene and was arrested on unrelated charges in Westerly, Rhode Island, in December, 2001. He was returned to Connecticut and charged with multiple crimes.

At trial, the state presented the eyewitness testimony from three people who knew the defendant and saw him with a gun at the time of the shooting or saw him shoot the victim. The defendant called no witnesses. Following his conviction, the defendant was sentenced to five years in the custody of the commissioner of correction, two years of which were nonsuspendable. The defendant appealed.

I

The defendant claims that the court denied him the right to a fair trial and due process of law guaranteed by the fourteenth amendment to the United States constitution when it permitted the state to introduce evidence of consciousness of guilt. We decline to review

[1] The jury was unable to reach a verdict on the charge of murder in violation of General Statutes § 53a-54a.

the defendant's claim because he did not preserve the claim by objecting to the testimony at trial.

The following facts are relevant to the defendant's claim. The state proffered the testimony of Bishop Jones, who was the boyfriend of Dominique McGuire, who had witnessed the shooting and had given a statement to the police implicating the defendant. McGuire testified consistently with that statement. Jones then was called to testify before the jury. He testified that the defendant had approached him about the statement McGuire had given the police. The defendant said that what McGuire did was wrong "because I can't go to jail for that." Jones further testified that the defendant told him that for $500 to $1500, he could have the house that Jones shared with McGuire shot up. The court then intervened to instruct the jurors that they were the finders of fact and the judges of the credibility of the witnesses. The court told the jurors that the purpose of the testimony concerned consciousness of guilt and that it would give them further instructions later. The defendant did not object to the testimony.

The defendant claims that the court's admitting the subject testimony violated his constitutional right to due process because the testimony was highly prejudicial to him, as it was of the same nature as the crimes with which he was charged, and, therefore the state's burden of proof was lessened by the admission of the testimony. The state argues that we should not review the defendant's claim because the issue was not preserved at trial, and the defendant has not advanced a theory by which this claim should be reviewed. Furthermore, the state argues that even if the defendant had sought review of the unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the claim would not merit *Golding* review because it is not of constitutional magnitude. The state also argues that the claim is not reviewable pursuant

to the plain error doctrine because the defendant did not request such review, and it is not warranted by the circumstances. We agree with the state.

"The standard for the preservation of a claim of improperly admitted evidence at trial is well settled. Practice Book § 60-5 provides in relevant part that [this] court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Citation omitted; internal quotation marks omitted.) *Rubel* v. *Wainwright*, 86 Conn. App. 728, 745, 862 A.2d 863, cert. denied, 273 Conn. 919, 871 A.2d 1028 (2005).

"It has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the . . . *Golding* standard." (Internal quotation marks omitted.) *State* v. *Payne*, 63 Conn. App. 583, 595, 777 A.2d 731 (2001), rev'd on other grounds, 260 Conn. 446, 797 A.2d 1088 (2002). This court also does not grant plain error review where it is not requested; *State* v. *Abraham*, 64 Conn. App. 384, 404 n.18, 780 A.2d 223, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001); and even if we did, the claim here does not present the type of extraordinary situation that warrants plain error review. For these reasons, we decline to review the defendant's claim of evidentiary impropriety.

## II

The defendant's second claim is that the prosecutor engaged in misconduct during rebuttal argument. We disagree.

The defendant's theory of the case was that others involved in the altercation with the victim shot him or possessed the firearm. His counsel argued that theory before the jury.[2] His counsel also argued that the state failed to call others who were involved in the verbal and physical altercation on the night in question. In response to the defendant's closing argument, the prosecutor argued: "Counsel asked what happened to Bugga? What happened to John Thomas? What happened to the defendant's friends that were with him at that time? What happened to the people he was with at the bar that night? I could be asking the same questions. Counsel now has a theory on perhaps Bugga did the shooting, how he was held up tight. Perhaps Bugga's left-handed. Ladies and gentlemen, Bugga was never seen with the gun. In fact, the last person holding the gun was [the defendant]."

The defendant objected at trial to that portion of the prosecutor's rebuttal argument stating that the state had shifted the burden to him to prove his innocence and had indicated that he should have produced his friends from the bar. The defendant requested a curative instruction. In response to the defendant's objection, the court stated: "I see fit to give an instruction reminding the jury that [the defendant] has no obligation and there was no evidence, in my mind, that anyone at the scene was a friend of the defendant." The court instructed the jury that the state bears the burden of

---

[2] Defense counsel argued: "I only have one opportunity to speak, so when [the prosecutor] gets up for rebuttal, I'd like you to remember one thing. Everything he's arguing to you is contingent on you believing these people beyond a reasonable doubt.

"And I want you to have this question when [the prosecutor] gets up. I want you to say [that] if you know where he went and what car he went in, please tell us what happened to Bugga. Where did he go? Where did John Thomas go? Why was he not arrested? Those are questions that should be going through your mind among many, many others, and I'm going to ask you whether or not this makes sense on a common sense level."

proof and that the defendant is not required to prove anything.[3]

"[P]rosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . .

"Claims of prosecutorial misconduct trigger a two-pronged inquiry. First, we must examine the allegedly improper conduct to determine if it was, in fact, improper and rose to the level of prosecutorial misconduct. If it did, we will analyze the effect of the misconduct to determine if it deprived the defendant of a fair trial. . . . Generally, [i]n evaluating a prosecutorial misconduct claim, we review whether the record discloses a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . .

"In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this

---

[3] The court instructed the jury: "I want to remind you, the defense has no obligation whatsoever to present evidence, to present witnesses, and has no obligation whatsoever to disprove what it is that the state claims here."

court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are *the extent to which the misconduct was invited by defense conduct or argument* . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . *the strength of the curative measures adopted* . . . and the strength of the state's case." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Orellana,* 89 Conn. App. 71, 97–98, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

The issue here is whether the prosecutor denied the defendant a fair trial by asking the jury why the defendant did not call his friends to testify on his behalf if he was innocent. The transcript reveals that the issue of alleged missing witnesses was discussed at the charging conference. Before final arguments began, the court made a record of the charging conference: "The only other matter with respect to the charge conference that I want to mention is that there was a discussion with respect to alleged missing witnesses. We did talk, meaning counsel and I, did talk about *Malave,*[4] and the fact that the court, based upon that decision, will not give any type of missing witness instruction. However, counsel did request, and I did agree, that counsel can, pursuant to *State* v. *Abrahams,* 79 Conn. App. 767, 773, 831 A.2d 299 (2003) . . . we do not prohibit counsel from making appropriate comment in closing argument about the absence of a particular witness insofar as that witness' absence may reflect on the weakness of the opposing party's case. Such comment is allowed as long as counsel does not directly exhort the jury to draw an adverse inference by virtue of the witness' absence."

[4] *State* v. *Malave,* 250 Conn. 722, 740, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000).

We note that during his closing argument, defense counsel asked the jury to consider why Bugga and Thomas were not arrested. In other words, defense counsel invited the prosecutor to comment on the whereabouts of these individuals. In his rebuttal, the prosecutor turned the question around, asking why the defendant did not call his friends to testify if he was innocent. "A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." *State* v. *Singh*, 259 Conn. 693, 718, 793 A.2d 226 (2002). There was evidence that Thomas and Bugga were involved in the altercation with the victim. There was no evidence, however, that Thomas and Bugga were the defendant's friends. We cannot say that the prosecutor's misstatement was so harmful as to prejudice the defendant. This court has often observed that there is a "rough and tumble quality" about final arguments and that counsel must be given sufficient latitude to state their cases to the jury. *State* v. *Tate*, 85 Conn. App. 365, 370, 857 A.2d 394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). Although it would have been better for the prosecutor not to have characterized Bugga and Thomas as the defendant's friends, the defendant has not demonstrated prosecutorial misconduct or that he was prejudiced by the comment. We note that the court gave a curative instruction to ameliorate the effects of the misstatement.[5] The court also stated several times in its charge to the jury that the state has

---

[5] The court instructed the jury: "As I told you, summations by the attorneys are not evidence. In particular, with respect to certain comments that the state's attorney may have made during his closing summation, there was at least a reference to friends of the defendant being at the scene of the alleged shooting. My recollection is that there was no testimony as to whether or not any of the people at the scene were or were not friends of the defendant. Obviously, it is your recollection that counts, but the concern that I have is—and I want to remind you, the defense has no obligation whatsoever to present evidence, to present witnesses, and has no obligation whatsoever to disprove what it is that the state claims here."

the burden of proving its case. A jury is presumed to have followed the court's instructions. Id., 383.

On the basis of our review of the record, we conclude that the defendant was not denied a fair trial. Even if we had concluded that the prosecutor's comment to which the defendant objected was misconduct, the defendant has not demonstrated that he was prejudiced by the comment. The jury convicted the defendant of criminal possession of a firearm; there was testimony that the defendant had a weapon. The jury is the arbiter of the credibility of witnesses and the finder of facts. The jury was unable to reach a verdict on the more serious charge of murder.

The judgment is affirmed.

In this opinion the other judges concurred.