******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DAVID A. ABRAHAMS *v.* ROBERT PHOTOS ET AL.
## (AC 47139)

Alvord, Seeley and Norcott, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendant attorney's second motion for summary judgment on the plaintiff's complaint alleging, inter alia, legal malpractice. The plaintiff claimed, inter alia, that the court improperly rendered summary judgment for the defendant despite the existence of genuine issues of material fact. *Held*:

The trial court properly granted the defendant's second motion for summary judgment, as the defendant made a showing, by way of the plaintiff's deposition testimony in which he stated multiple times that the defendant was not his attorney, that there was a lack of a genuine issue of material fact as to the nonexistence of an attorney-client relationship between the plaintiff and the defendant, which vitiated every claim in the operative complaint, and the plaintiff subsequently failed to satisfy his burden of presenting evidence demonstrating the existence of a genuine issue of material fact, thereby entitling the defendant to judgment as a matter of law.

The trial court properly considered the defendant's second motion for summary judgment because it was not barred by the doctrines of res judicata or collateral estoppel, as the court's denial of the defendant's first motion for summary judgment was not a final judgment, the defendant was not otherwise precluded from filing his second motion, and it was within the trial court's discretion to consider the renewed motion for summary judgment that had previously been denied where additional or new evidence had been submitted that was not before the court in ruling upon the earlier motion for summary judgment.

The trial court did not improperly fail to enter a default judgment against the defendant for filing his second motion for summary judgment in an untimely manner in violation of the order of pleadings set forth in the rule of practice (§ 10-6), as the defendant's filing of his second motion for summary judgment, which was not a pleading, was not procedurally untimely pursuant to the rule of practice (§ 17-44) because no scheduling order existed at that time and the case was not assigned for trial at the time that that motion was filed.

Argued April 22—officially released July 22, 2025

*Procedural History*

Action to recover damages for, inter alia, the named defendant's alleged legal malpractice, and for other

relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Cordani, J.*, denied the named defendant's motion for summary judgment; thereafter, the defendant Cheryl Anderson was defaulted for failure to appear; subsequently, the court, *Saadi, J.*, granted the named defendant's second motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*David A. Abrahams*, self-represented, the appellant (plaintiff).

*Michael S. Tripicco*, with whom, on the brief, was *Cristin E. Sheehan*, for the appellee (named defendant).

*Opinion*

NORCOTT, J. The self-represented plaintiff, David A. Abrahams, appeals from the summary judgment rendered by the trial court in favor of the defendant Attorney Robert Photos in this action arising from an alleged attorney-client relationship between the plaintiff and the defendant.[1] On appeal, the plaintiff claims that the court improperly (1) rendered summary judgment in favor of the defendant despite the existence of genuine issues of material fact, (2) failed to determine that a second motion for summary judgment filed by the defendant, which is the operative motion at issue in this appeal, was barred by the doctrines of res judicata or collateral estoppel, and (3) failed to enter a default judgment against the defendant for filing his second motion for summary judgment prior to filing his answer to the revised complaint.[2] We disagree and, accordingly, affirm the judgment of the trial court.

---

[1] The complaint also named as a defendant Cheryl Anderson, who did not participate in this appeal. The plaintiff's motion to default Cheryl Anderson for failure to appear was granted by the court, *Hon. Dale W. Radcliffe*, judge trial referee. We refer in this opinion to Robert Photos as the defendant.

[2] See Practice Book § 61-3 ("[a] judgment disposing of only a part of a complaint . . . is a final judgment if that judgment disposes of all causes of action in that complaint . . . brought . . . against a particular party").

The following facts are not in dispute. In 2001, the plaintiff was convicted, following a jury trial, of various crimes, as set forth in *State* v. *Abrahams*, 79 Conn. App. 767, 768–69, 831 A.2d 299 (2003). See id., 783 (affirming judgment of conviction). He was sentenced to a total effective term of fifty-one years of incarceration followed by nine years of special parole.[3]

On April 18, 2016, David Anderson, the son of the plaintiff and Cheryl Anderson, was driving a car in Bridgeport when he was struck and killed when another vehicle that was being pursued by the police collided with his vehicle.[4] In her capacity as the administrator of David's estate, Cheryl brought a wrongful death action against the city of Bridgeport and the Bridgeport Police Department. In a final accounting, David's estate was valued at $100,000, which included $50,000 from a settlement in the wrongful death action and $50,000 from a settlement of an automobile insurance claim related to the accident. After the deduction of fees, costs, and liens from the final accounting of David's estate, the plaintiff and Cheryl each received approximately $13,152 in settlement payments.

In 2019, the plaintiff commenced the present action. In his revised complaint, he alleged fraud, "collusion,"

---

[3] Specifically, the plaintiff was convicted of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and criminal possession of a firearm in violation of General Statutes (Supp. 2000) § 53a-217. See *State* v. *Abrahams*, supra, 79 Conn. App. 768. On those charges, he was sentenced to forty-one years of incarceration, and his sentence was enhanced by five years pursuant to General Statutes § 53-202k. During a concurrent proceeding, the court found the plaintiff guilty of violation of probation in violation of General Statutes (Supp. 2000) § 53a-32 and sentenced him to an additional five years of incarceration, which was to be served consecutive to all other sentences. See *Abrahams* v. *Commissioner of Correction*, Docket No. 3:10cv519 (MRK), 2010 WL 5093113, *1 (D. Conn. December 8, 2010).

[4] In the interest of clarity and simplicity, in this opinion we refer to Cheryl Anderson and David Anderson by their first names.

breach of trust, negligence, "deliberate interference of rights," legal malpractice, breach of contract, and fraudulent misrepresentation. The crux of the allegations in the revised complaint is that the defendant promised to represent the plaintiff regarding a sentence modification and promised to secure a large settlement in the wrongful death action for the plaintiff if he agreed to not be a party to that action, but the defendant did not pursue a sentence modification on the plaintiff's behalf nor did he keep the plaintiff apprised of the status of the wrongful death action, failing even to seek his input prior to the settlement of that action.[5]

The defendant filed a motion for summary judgment in 2020, which the court, *Cordani, J.,* denied. After

[5] Specifically, the plaintiff alleged that the defendant (1) promised and failed to represent him regarding a sentence modification, thereby inducing him to give up his "right" to be named as a party in the wrongful death action, then settled that action for nowhere near the "nice amount . . . to start his life over" that was promised to him (fraud), (2) colluded with Cheryl to deprive him of his "right" to be a party to the wrongful death action, then settled that action without his knowledge or input ("collusion"), (3) failed to keep him updated concerning the wrongful death action and failed to represent him in a sentence modification despite having promised to do so (breach of trust), (4) owed him a duty of reasonable care to keep him updated on the status of the wrongful death action and to represent him concerning a sentence modification, but failed to do so, and used deception to induce him to give up his "right" to be named as a party in the wrongful death action (negligence), (5) induced him with promises of big settlements in the wrongful death action and with a sentence modification to give up his "right" to be included as a party in the wrongful death action ("deliberate interference of rights"), (6) promised him that if he agreed to not be a party to the wrongful death action then the Department of Correction (department) would not take one half of his share of the settlement and promised to represent him in a sentence modification proceeding but broke his promises (legal malpractice), (7) promised and failed to represent him concerning a sentence modification wherein his sentence would be reduced to at least twenty-five years (breach of contract), and (8) informed the plaintiff that he would not be a party to the wrongful death action in order to ensure that the department would not take one half of his share of the settlement of that action, promised to represent him concerning a sentence modification, and promised to reduce his sentence to at least twenty-five years as a result of "connections and favors owed to him," but failed to

completing a deposition of the plaintiff, the defendant filed a second motion for summary judgment in February, 2023. In that motion, the defendant argued that he was entitled to judgment as a matter of law because he never represented the plaintiff, noting that the plaintiff acknowledged numerous times in his deposition testimony that the defendant had never been his attorney. The plaintiff filed a memorandum in opposition, arguing that the defendant's second motion for summary judgment should be denied as untimely because it was not filed in accordance with the order of pleadings set forth in Practice Book § 10-6[6] and that the defendant was precluded by the doctrines of res judicata and/or collateral estoppel from filing a second motion for summary judgment.

Following a hearing, the court, *Saadi, J.*, rendered summary judgment in favor of the defendant on the entirety of the revised complaint as alleged against him. The court determined that the plaintiff's procedural objections were without merit and further concluded that there were no genuine issues of material fact as to the absence of an attorney-client relationship between the plaintiff and the defendant concerning the wrongful death action and the sentence modification and, therefore, the defendant was entitled to judgment as a matter of law. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the court improperly rendered summary judgment despite the existence of genuine issues of material fact concerning whether there was an attorney-client relationship between the plaintiff and the defendant as to (a) the wrongful death

---

keep his promises (fraudulent misrepresentation). (Internal quotation marks omitted.)

[6] See footnote 13 of this opinion.

action and (b) a sentence modification.[7] We are not persuaded.

We begin with the following relevant principles of law, including our standard of review. Practice Book § 17-49 provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

"A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.)

---

[7] The defendant contends in his appellate brief that certain counts of the revised complaint were impliedly stricken. The defendant had filed a motion to strike on February 2, 2022, prior to the filing of his second motion for summary judgment. At the hearing on that motion, the court, *Hon. Dale W. Radcliffe*, judge trial referee, stated: "I'm going to deny the—the motion to strike. I'm going to specifically indicate, however, that . . . the only causes of action that I see as pled in this complaint [are] [n]egligent misrepresentation, fraudulent misrepresentation, legal malpractice, and negligence, and breach of fiduciary duty . . . ." In ruling on the defendant's second motion for summary judgment, the court, *Saadi, J.*, addressed the eight counts alleged in the revised complaint in the context of a motion for summary judgment. Accordingly, we will address the court's granting of the defendant's second motion for summary judgment as to all eight counts as enumerated in the plaintiff's revised complaint.

*Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015).

"An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession. . . . Evidence of either a retainer agreement or a contract between the parties is relevant to the determination of its existence." (Citations omitted; internal quotation marks omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 422, 886 A.2d 415 (2005).

A

As to the wrongful death action, the plaintiff argues that the court took his deposition testimony out of context, overlooked evidence, and improperly determined that he failed to present concrete evidence creating a genuine issue of material fact as to whether an attorney-client relationship existed. We disagree.

The defendant demonstrated that there were no genuine issues of material fact that no attorney-client relationship existed between him and the plaintiff concerning the wrongful death action. The court did not, as the plaintiff argues, take his deposition testimony out of context. Rather, it is quite clear considering the plaintiff's deposition as a whole that the plaintiff testified multiple times that the defendant was not his attorney. Specifically, when asked whether he knew "for a fact that [the defendant] was not representing [him] on the wrongful death suit," the plaintiff answered that the defendant "was representing Cheryl on the wrongful death suit because [the plaintiff] wasn't a party to it." When asked, "[a]nd you know if someone is your attorney, you usually sign a document saying they're your attorney," the plaintiff responded in the affirmative. Additionally, the plaintiff stated that he did not give the defendant any money nor did he sign any documents

and further stated that the defendant "wasn't my attorney, per se. I didn't sign any retainer agreement with him." When asked "[d]o you recall exactly when that was that you realized that [the defendant] did not represent you or was not your attorney," the plaintiff responded, "I mean he was never my attorney . . . ."

After the defendant made a showing, by way of the plaintiff's statements in his deposition testimony, that there was no real doubt that an attorney-client relationship did not exist between the plaintiff and the defendant, the plaintiff then failed to satisfy his burden of presenting evidence demonstrating the existence of a genuine issue of material fact. Additionally, as noted by the trial court, the plaintiff filed multiple motions to intervene in the wrongful death action, which the court denied, thereby further demonstrating his knowledge through filings made as a self-represented litigant that he was not a party to that action.[8] For the foregoing reasons, we conclude that the court properly determined that no genuine issues of material fact existed that there was no attorney-client relationship between the plaintiff and the defendant for the purposes of the wrongful death action.

B

Concerning the sentence modification, the plaintiff argues that the court improperly determined that no genuine issues of material fact existed concerning the absence of an attorney-client relationship and, in so concluding, overlooked portions of his deposition testimony and improperly determined that he failed to present concrete evidence creating a genuine issue of material fact. We disagree.

---

[8] See, e.g., *Village Mortgage Co.* v. *Garbus*, 201 Conn. App. 845, 862 n.15, 244 A.3d 952 (2020) (it is well established that court may take judicial notice of file in another case regardless of whether it is between same parties).

During his deposition, the plaintiff stated that he never signed a retainer agreement with the defendant but that the defendant discussed his criminal case with him and the defendant stated that he would get back to the plaintiff in thirty days but failed to do so. The plaintiff explained that the defendant was David's attorney on a criminal matter that ended in February, 2016, when the charges against David were "dropped." When the plaintiff was asked during his deposition, "[s]o you're alleging that [the defendant] told you specifically that he'll handle your sentence modification," he answered, "[r]ight. Well, that's what he told David. He told David, 'do not worry about your father. I'll take care of it. Get your life back together. We'll deal with that later. Get your life back together.' "

The court reasoned in its decision that "[t]he defendant argues that the informal statements to comfort the plaintiff's son David, the gathering of information from the plaintiff to analyze the merits of applying for a sentence modification and then failing to inform the plaintiff that the defendant would not represent him does not establish an attorney-client relationship. While the defendant could certainly have avoided any confusion by informing the plaintiff that he was not going to represent him for the purpose of seeking a sentence modification, the failure to do so does not transform a noncommittal conversation about possible representation into an attorney-client relationship."

Whether a noncommittal conversation about possible legal representation would be sufficient to create an attorney-client relationship is not an issue we need to address in the present case because the plaintiff made clear in his deposition that no such relationship existed. It bears repeating that, when he was asked, "[d]o you recall exactly when that was that you realized that [the defendant] did not represent you or was not your attorney," the plaintiff responded, "I mean he was never my

attorney . . . .'' Additionally, the plaintiff's statements concerning what David allegedly told the plaintiff do not create a genuine issue of material fact. The court could not properly consider them because they were hearsay.[9] See *Walker* v. *Housing Authority*, 148 Conn. App. 591, 600, 85 A.3d 1230 (2014) (''when deciding a motion for summary judgment a court may not consider material that would be hearsay at trial'' (internal quotation marks omitted)). Accordingly, we conclude that no genuine issue of material fact existed that the parties had no attorney-client relationship for the purpose of a sentence modification.[10]

---

[9] Section 8-1 (3) of the Connecticut Code of Evidence defines ''hearsay'' as ''a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted.'' None of the hearsay exceptions applies. See Conn. Code Evid. §§ 8-2 through 8-10.

[10] The court reasoned, in the alternative, that, even if it were assumed, for the sake of argument, that there were genuine issues of material fact regarding the existence of an attorney-client relationship as to the sentence modification, the defendant, nonetheless, was entitled to judgment as a matter of law because ''the plaintiff has not plead[ed] any facts demonstrating he suffered any prejudice, or compensable loss or harm due to the defendant not filing for sentence modification. In his deposition the plaintiff acknowledged he was not prevented from engaging other counsel and filing for a sentence modification at any time in the several years since he met with the defendant and that he has chosen not to do so. . . . Finally, during the July 27, 2023 hearing the plaintiff acknowledged that at the time he met with the defendant in April, 2016, he had not yet served the required minimum of his fifty-one year sentence pursuant to [General Statutes] § 53a-35a.'' (Citations omitted.)

We agree with the court's alternative reasoning and note that there exist no genuine issues of material fact that the plaintiff has not suffered any harm as a result of the defendant not pursuing a sentence modification on his behalf because the plaintiff will not have served the twenty-five year mandatory minimum of his 2001 sentence until 2026. Pursuant to § 53a-35a, the plaintiff's mandatory minimum sentence for each of his consecutive sentences for attempted murder and assault is ten years, which amounts to twenty years, plus the five year sentence enhancement, which, pursuant to General Statutes § 53-202k, ''shall not be suspended or reduced . . . .'' Pursuant to General Statutes § 53a-39 (d), the statutory provisions permitting a modification of a sentence upon a finding of good cause ''shall not apply to any portion of a sentence imposed that is a mandatory minimum sentence for an offense which may not be suspended or reduced by the court.''

In conclusion, and in the exercise of our plenary review over the interpretation of pleadings,[11] we note that the existence of an attorney-client relationship is an integral component of each claim alleged in the revised complaint. Accordingly, the lack of a genuine issue of material fact as to the nonexistence of an attorney-client relationship between the plaintiff and the defendant as to both the wrongful death action and the sentence modification vitiates the basis for every claim alleged in the revised complaint against the defendant, thereby entitling the defendant to judgment as a matter of law. On the basis of the foregoing, we conclude that the court properly granted the defendant's second motion for summary judgment as to the entirety of the revised complaint alleged against the defendant.

## II

The plaintiff next claims that the court "erred by granting the defendant's second motion for summary judgment in which the defendant litigated the same set of facts as his first motion for summary judgment, violating the well established doctrines of res judicata/collateral estoppel." We disagree.

We begin by setting forth the following relevant legal principles and standard of review. "The doctrines of collateral estoppel and res judicata, also known as issue preclusion and claim preclusion, respectively, have been described as related ideas on a continuum. . . . Both doctrines share common purposes, namely, to protect the finality of judicial determinations, [to] conserve the time of the court, and [to] prevent wasteful litigation . . . . Despite their conceptual closeness . . . the two doctrines are regarded as distinct. . . .

---

[11] See, e.g., *Carpenter* v. *Daar*, 346 Conn. 80, 128, 287 A.3d 1027 (2023) ("The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.)).

The doctrine of collateral estoppel prevents a party from relitigating issues and facts [that have been] actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them [on] a different claim . . . whereas the doctrine of res judicata prevents a party from relitigating the same claim following a final judgment on the merits, regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Solon* v. *Slater*, 345 Conn. 794, 810, 287 A.3d 574 (2023). "[T]he applicability of res judicata or collateral estoppel presents a question of law over which we employ plenary review." (Internal quotation marks omitted.) *Rockwell* v. *Rockwell*, 196 Conn. App. 763, 769, 230 A.3d 889 (2020).

The plaintiff's claim is without merit because "res judicata and collateral estoppel depend on the existence of a valid final judgment . . . ." *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). In the present case, the court's denial of the defendant's first motion for summary judgment was not a final judgment.[12] See *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008) ("denial of a motion for summary judgment does not result in a judgment"); see also *CFM of Connecticut,*

---

[12] None of the exceptions to the general rule that a denial of a motion for summary judgment is not a final judgment applies in the present case. See, e.g., *Hopkins* v. *O'Connor*, 282 Conn. 821, 828, 925 A.2d 1030 (2007) (denial of motion for summary judgment is immediately appealable when motion is predicated upon colorable claim of absolute immunity based on sovereign immunity); *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 236, 4 A.3d 851 (2010) (denial of motion for summary judgment is immediately appealable when denial is due to doctrine of collateral estoppel or res judicata); see also *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) (establishing two circumstances in which otherwise interlocutory order is appealable pursuant to General Statutes § 52-263).

*Inc.* v. *Chowdhury*, 239 Conn. 375, 398, 685 A.2d 1108 (1996) (critical factor in determining whether judicial determination constitutes final judgment for purposes of res judicata is whether it constitutes final judgment for purposes of appeal), overruled on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999). Accordingly, neither the doctrine of collateral estoppel nor the doctrine of res judicata is applicable.

The defendant was not otherwise precluded from filing his second motion for summary judgment because "[t]here is nothing in the rules of practice or in our case law . . . that specifically restricts a party to one summary judgment motion." *Fiaschetti* v. *Nash Engineering Co.*, 47 Conn. App. 443, 445–46, 706 A.2d 476, cert. denied, 244 Conn. 906, 714 A.2d 1 (1998). Rather, "it is within the trial court's discretion to consider a renewed motion for summary judgment that has previously been denied where . . . additional or new evidence has been submitted which was not before the court in ruling upon the earlier motion for summary judgment." *Mac's Car City, Inc.* v. *American National Bank*, 205 Conn. 255, 262, 532 A.2d 1302 (1987). We discern no reason why the defendant's second motion for summary judgment, to which the new evidence of the plaintiff's deposition was appended, should not have been heard by the trial court and, accordingly, conclude that the court properly considered it.

### III

The plaintiff last claims that the court improperly failed to enter a default judgment against the defendant for filing his second motion for summary judgment in an untimely manner in violation of the order of pleadings set forth in Practice Book § 10-6 by filing it before answering the revised complaint. He also contends that he was prejudiced by the defendant's filing of his answer to the revised complaint after the hearing on the second

motion for summary judgment because his answer cre-
ated genuine issues of material fact. We disagree.

The plaintiff's argument regarding the order of plead-
ings is rooted in a misinterpretation of our procedural
practices. It is true that pleadings, generally, are not to
be filed outside of the order specified in Practice Book
§ 10-6.[13] See *Reale* v. *Rhode Island*, 192 Conn. App. 759,
764, 218 A.3d 723, cert. denied, 334 Conn. 901, 219 A.3d
798 (2019). Although that section sets forth the order
of pleadings, it does not dictate the proper time frame
for the filing of a motion for summary judgment because
such a motion, axiomatically, is not a pleading. Rather,
Practice Book § 17-44 establishes the proper timing for
the filing of a motion for summary judgment by provid-
ing in relevant part that "[i]n any action . . . any party
may move for a summary judgment as to any cause of
action or defense as a matter of right *at any time* if
no scheduling order exists and the case has not been
assigned for trial. . . ." (Emphasis added.) The defen-
dant's filing of his second motion for summary judgment
was not procedurally untimely because no scheduling
order existed at that time and the case was not assigned
for trial at the time that that motion was filed.

Although Practice Book § 17-44 allows for the filing
of a motion for summary judgment "at any time," this
was not always the rule. Historically, prior to October
1, 1992, Practice Book § 379, which was the precursor

---

[13] Practice Book § 10-6 provides that "[t]he order of pleading shall be
as follows:
  "(1) The plaintiff's complaint.
  "(2) The defendant's motion to dismiss the complaint.
  "(3) The defendant's request to revise the complaint.
  "(4) The defendant's motion to strike the complaint.
  "(5) The defendant's answer (including any special defenses) to the com-
plaint.
  "(6) The plaintiff's request to revise the defendant's answer.
  "(7) The plaintiff's motion to strike the defendant's answer.
  "(8) The plaintiff's reply to any special defenses."

to Practice Book § 17-44, required that the pleadings be closed before seeking a summary judgment, but the well established rule in Practice Book § 17-44 is sound because, "[o]n a motion for summary judgment, the questions are whether there is any material fact in issue, and, if not, whether the movant is entitled to judgment as a matter of law. . . . [W]hen considering a motion for summary judgment, facts in addition to those asserted in the complaint can form the basis for an argument that there is no material fact in dispute that would prevent judgment as a matter of law. When there is no such material fact in dispute or where there is agreement of the parties as to every relevant fact . . . the pleadings need not be closed in order to move for summary judgment." (Footnote omitted; internal quotation marks omitted.) *Gordon* v. *Gordon*, 170 Conn. App. 713, 722–23, 155 A.3d 809, cert. denied, 327 Conn. 904, 170 A.3d 1 (2017). Because no genuine issues of material fact exist, the pleadings need not have been closed in the present case before the defendant filed the second motion for summary judgment.

It was not until August 21, 2023, that the plaintiff filed motions for default, arguing that the defendant should be defaulted for filing his answer to the revised complaint in an untimely fashion.[14] By the time the plaintiff filed these motions, however, it was too late for the trial court to consider them because the motions for default were moot, as the defendant already had filed an answer to the revised complaint on July 27, 2023.[15]

---

[14] The plaintiff also filed motions for default after the defendant filed his second motion for summary judgment, which motions were denied without prejudice by the clerk, pursuant to Practice Book § 17-32 (a), due to a lack of clarity in the relief sought and, in the alternative, because of the pendency of the defendant's second motion for summary judgment.

[15] Practice Book § 17-32 (b) provides in relevant part: "If a party who has been defaulted under this section files an answer before a judgment after default has been rendered by the judicial authority, the default shall automatically be set aside by operation of law . . . ." Accordingly, by an even stronger force of logic, if a party who has not been defaulted for failure to

In sum, the court, in rendering summary judgment, had before it the pleadings, including the defendant's answer to the revised complaint, along with affidavits and other proof submitted by the parties and properly concluded that no genuine issues of material fact existed and, therefore, the defendant was entitled to judgment as a matter of law. For the foregoing reasons, the plaintiff's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

plead files an answer before the court renders judgment, that party cannot then be held in default.